UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MECOX PARTNERS LP, by and through LLOYD GOLDMAN, a Partner Other than the Tax Matters Partner,

                        Plaintiff,

          - against -

UNITED STATES OF AMERICA,

                        Defendant.

**OPINION AND ORDER**

11 Civ. 8157 (ER)

Ramos, D.J.:

       This action stems from a non-cash charitable gift deduction taken by Mecox Partners LP ("Mecox") on its 2004 United States Partnership Tax Return. On December 13, 2004, Mecox and a non-profit entity named the National Architectural Trust (the "NAT") executed a document that purported to convey an "Open Space and Architectural Façade Conservation Easement" from Mecox to the NAT. By its terms, the easement would preserve, in perpetuity, the façade of a certified historic structure owned by Mecox. Mecox claimed a deduction of $2.21 million for the donated easement as a "qualified conservation contribution" made in tax year 2004. The IRS disallowed the claimed deduction in full. On November 10, 2015, Mecox filed this action seeking, *inter alia*, judicial review of the IRS's refusal to recognize the deduction. The Government now moves for partial summary judgment that the IRS properly disallowed the deduction. For the reasons stated herein, the Government's motion is GRANTED.

## I. BACKGROUND

### A. Statutory Framework

The Internal Revenue Code (the "Code") generally allows a taxpayer to take a deduction for any "charitable contribution" made within the same tax year. 26 U.S.C. § 170(a)(1). A "charitable contribution" includes a gift of property, which is made to a charitable organization without the expectation of receiving adequate consideration. *See Hernandez v. Commissioner*, 490 U.S. 680, 690 (1989); *see also* 26 C.F.R. §§ 1.170A-1(h)(1), (2). Although a taxpayer is ordinarily not allowed to take a deduction for a gift of property consisting of less than the entire interest in that property, an exception is made for a "qualified conservation contribution." *See* 26 U.S.C. §§ 170(f)(3)(A), (B)(iii).

A "qualified conservation contribution" is a contribution (1) of a "qualified real property interest" (2) to a "qualified organization" (3) which is made "exclusively for conservation purposes." 26 U.S.C. § 170(h)(1); 26 C.F.R. § 1.170A-14(a). In order for a qualified conservation contribution to be made "exclusively for conservation purposes," the contribution must be "protected in perpetuity." 26 U.S.C. § 170(h)(5)(A). Federal regulations elaborate on what it means for a conservation purpose to be protected "in perpetuity":

> In the case of any donation under this section, any interest in the property retained by the donor (and the donor's successors in interest) *must be subject to legally enforceable restrictions* (for example, by recordation in the land records of the jurisdiction in which the property is located) that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation.

26 C.F.R. § 1.170A-14(g)(1) (emphasis added).

Generally, a contribution is considered to have been made for tax purposes in the year that it is delivered. *See* 26 C.F.R. § 1.170A-1(b) ("Ordinarily, a contribution is made at the time delivery is effected.")

2

The allowed deduction amount for a qualified conservation contribution is its fair market value at the time of the contribution. 26 C.F.R. § 1.170A-14(h)(3)(i). A deduction claimed for a contribution of property valued at more than $5,000 is generally denied unless the taxpayer meets certain substantiation requirements mandated by the Code, including, *inter alia*, that the taxpayer obtain a "qualified appraisal of the property." 26 U.S.C. §§ 170(f)(11)(A), (C). A "qualified appraisal" is defined as an "appraisal document" prepared by a "qualified appraiser" no earlier than 60 days before the contribution date of the appraised property and no later than the extended due date of the tax return claiming the deduction. 26 C.F.R. § 1.170A-13(c)(3)(i).

**B. Factual Background**[1]

Mecox is a limited partnership which since 1991 has owned the building located at 1 Jane Street, New York, New York (the "Property"). Defendant's Local Civil Rule 56.1 Statement of Material Facts ("Def. 56.1"), Doc. 32, ¶ 1; Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Material Facts, Doc. 34-2, ¶ 16. On November 29, 2004, the United States Department of the Interior designated the Property as a "certified historic structure" that contributes to the significance of the Greenwich Village Historic District, in which the Property is located. Def. 56.1 ¶ 2.

In December 2004, Mecox and a non-profit entity called the National Architectural Trust (the "NAT") executed a document entitled "Conservation Deed of Easement" (the "Deed of Easement"). *Id.* ¶ 3. The Deed of Easement purports to grant an "Open Space and Architectural Façade Conservation Easement" (the "Easement") on the Property to the NAT. *Id.* ¶ 4; Ex. 1 at 2.[2] According to the Deed of Easement, the Easement is "exclusively for conservation

---

[1] All facts stated herein are undisputed.

[2] All "Ex." references are to exhibits attached to the Declaration of Tomoko Onozawa, Doc. 31.

purposes," and states that Mecox shall not make "any alteration, construction or remodeling of existing exterior improvements on the Protected Façade(s)" of the Property or place any "signs or markers that would materially alter or change the appearance of the Protected Façade" without first obtaining the NAT's "express written consent."  Def. 56.1 ¶ 5; Ex. 1 at 2-3.  The Deed was signed by Lloyd Goldman on behalf of Mecox on December 13, 2004, and by James Kearns on behalf of the NAT on December 21, 2004.  Def. 56.1 ¶ 6; Ex. 1 at 7.  However, the Deed of Easement was not recorded with the New York City Department of Finance, Office of the City Register until the following calendar year, on November 17, 2005.  Def. 56.1 ¶ 7.

On July 12, 2005, Mecox filed with the IRS a United States Partnership Tax Return ("Form 1065") for tax year 2004.  *Id.* ¶ 8.  The Form 1065 included an appraisal report prepared by Jerome Haims Realty, Inc., dated June 13, 2005, which stated that the value of the Easement as of November 1, 2004 was $2.21 million.  *Id.* ¶¶ 9-10.  Accordingly, the Form 1065 claimed a deduction of $2.21 million in tax year 2004 for the donated Easement as a "qualified conservation contribution," as defined in the Code.  *Id.* ¶ 11.  The Form 1065 also deducted a noncash charitable contribution of $37,700 for legal and appraisal fees that Mecox spent in connection with the Easement donation.  *Id.* ¶ 12.

Approximately six years later, on June 16, 2011, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA").[3]  *Id.* ¶ 13.  Therein, the IRS disallowed both the claimed deduction of $2.21 million for the claimed qualified conservation contribution and the $37,700 deduction for legal and appraisal fees.  *Id.*  The IRS also charged Mecox with a 40%

---

[3] An FPAA is the instrument in which the IRS sets forth proposed adjustments to a partnership's tax return upon completion of an audit.

accuracy-related penalty under 26 U.S.C. § 6662(h), or in the alternative, a 20% accuracy-related penalty under 26 U.S.C. § 6662(a) and (b).  *Id.* ¶ 14.

**C. Procedural Background**

On November 10, 2011, Mecox filed the instant lawsuit pursuant to 26 U.S.C. § 6226(b), seeking judicial review of the IRS's adjustments of Mecox's 2004 Form 1065.  *See generally* Doc. 1.  Specifically, Mecox contends that the FPAA issued by the IRS was erroneous because: (1) the IRS mistakenly determined that the federal requirements for making a "qualified conservation contribution" were not met in 2004; (2) the IRS erroneously concluded that Mecox had not established the claimed $2.21 million value of the Deed of Easement; (3) the IRS erred when it concluded that the claimed $37,700 deduction for Mecox's legal and appraisal fees were not deductible; and (4) the IRS erred when it asserted an accuracy-related penalty of 40% under 26 U.S.C. § 6662(h), or in the alternative, a 20% penalty under 26 U.S.C. § 6662) and (b).  *Id.* ¶¶ 26-30.

On April 17, 2015, the Government moved for partial summary judgment with respect to Mecox's contention that the IRS erred in finding that the requirements for making a "qualified conservation contribution" were not met in 2004**.**  *See generally* Doc. 30.  Specifically, the Government asserts that the Easement contribution was not made until the Deed of Easement was recorded the following year, on November 17, 2005.  *Id.* at 1-2.  Furthermore, because the necessary appraisal of the Easement was conducted on June 13, 2005, it was not conducted within 60 days of the contribution date, as mandated by treasury regulation 26 C.F.R. § 1.170A-13(c)(3)(i).  *Id.* ¶ 2.

On May 15, 2015, Mecox filed its opposition, asserting that the contribution date was in fact the date that the executed Deed of Easement was delivered to the NAT, on December 21, 2004. *See generally* Doc. 34. The Government filed a reply on June 5, 2015. Doc. 37.

## II. DISCUSSION

### A. Standard of Review

Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

### B. Contribution Date of the Deed of Easement

As a matter of law, Mecox did not make a "qualified conservation contribution" in 2004, because the Conservation Deed of Easement was not effective until it was recorded on November 17, 2005.

In a federal tax controversy, state law governs the taxpayer's interest in the property while federal law determines the tax consequences of that interest. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) ("In the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." (internal citation omitted)); *see also United States v. Mitchell*, 403 U.S. 190, 197 (1971) ("[S]tate

law creates legal interests but [federal law] determines when and how they shall be taxed." (internal citation omitted)). Thus, the Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *Nat'l Bank*, 472 U.S. at 722 (internal citation omitted).

The property interest conveyed by the Deed of Easement is defined under New York law as a "conservation easement." New York Environmental Conservation Law ("ECL") Article 49, Title 3 defines a "conservation easement" as "an easement, covenant, restriction or other interest in real property, created under and subject to the provisions of this title which limits or restricts development, management or use of such real property for the purpose of preserving or maintaining the scenic, open, historic, archaeological, architectural, or natural condition, character, significance or amenities of the real property . . . ." ECL § 49-0303(1). The Easement in this case correspondingly restricts Mecox from making "any alteration, construction or remodeling of existing exterior improvements on the Protected Façade(s)" of the Property – a "certified historic structure" – and from placing any "signs or markers that would materially alter or change the appearance of the Protected Façade" without first obtaining the NAT's "express written consent." Ex. 1 at 3.

New York enacted ECL Article 49, Title 3 governing conservation easements in 1985. The legislation created substantive legal barriers that made it harder to defeat a conservation easement. *See* ECL § 49-0305(5).[4] These same protections are not available to common law

---

[4] ECL § 49-0305(5) states, in pertinent part: "Enforcement [of a conservation easement] shall not be defeated because of any subsequent adverse possession, laches, estoppel or waiver. No general law of the state which operates to defeat the enforcement of any interest in real property shall operate to defeat the enforcement of any conservation easement unless such general law expressly states the intent to defeat the enforcement of such easement or provides for the exercise of the power of eminent domain. It is not a defense in any action to enforce a conservation easement that: (a) It is not appurtenant to an interest in real property; (b) It can be or has been assigned to another holder; (c) It is not of a character that has been recognized traditionally at common law; (d) It imposes a negative burden; (e) It imposes affirmative obligations upon the owner of any interest in the burdened property, or

easements and restrictive covenants.  However, in order to benefit from the enhanced level of protection, Article 49 also sets out certain procedural steps for the establishment of a conservation easement that are not required to convey a common law easement or restrictive covenant.  One of these requirements is that the deed of a conservation easement be "duly recorded."  ECL § 49-0305(4).

Under New York law, an instrument purporting to create, convey, modify, or terminate a conservation easement is not effective unless recorded.  The ECL states, in relevant part:

> A conservation easement shall be duly recorded and indexed as such in the office of the recording officer for the county or counties where the land is situate in the manner prescribed by article nine of the real property law. The easement shall describe the property encumbered by the easement by adequate legal description or by reference to a recorded map showing its boundaries and bearing the seal and signature of a licensed land surveyor . . . . *An instrument for the purpose of creating, conveying, modifying or terminating a conservation easement shall not be effective unless recorded.*

ECL § 49-0305(5) (emphasis added).

The Deed of Easement in this case was not recorded until 2005.  Therefore, although "[o]rdinarily, a contribution is made at the time delivery is effected," 26 C.F.R. § 1.170A-1(b), the Deed of Easement had no legal effect when Mecox delivered it to the NAT in 2004.  It was not until the Deed was recorded the following year that the Deed became effective, and the Easement was conveyed.  Consequently, Mecox erred in taking a deduction for a qualified conservation contribution in 2004, because no contribution had been made up to that point.

---

upon the holder; (f) The benefit does not touch or concern real property; or (g) There is no privity of estate or of contract."

This conclusion is supported by two recent U.S. Tax Court decisions, which addressed the precise substantive issues present here.[5]  In *Zarlengo v. Commissioner*, 108 T.C.M. (CCH) 155, 2014 WL 3907047 (2014), the petitioners and the NAT executed a "Conservation Deed of Easement" in September 2004 with respect to petitioners' Manhattan townhouse.  2014 WL 3907047, at *1, *4.  The easement restricted petitioners' ability to modify the façade of the townhouse, which was a certified historic structure.  *Id.* at *3.  On January 26, 2005, the deed of easement was recorded with the New York City Department of Finance, Officer of the City Register.  *Id.* at *4.

Petitioners argued that the deed was effective and legally enforceable in 2004, when the deed was executed.  *Id.* at *8.  The Tax Court held, however, that the deed was only effective as of the January 26, 2005 recording date.  *Id.* at *9.  The Tax Court explained that this was because the ECL requires conservation easements to be recorded to have "any legal effect in the State of New York."  *Id.*  The Court found, therefore, that petitioners were not entitled to a deduction for the easement contribution in tax year 2004.  *Id.*

In *Rothman v. Commissioner*, the petitioners also executed a conservation deed of easement on their Brooklyn townhouse, which similarly granted the NAT an open space and architectural façade easement on their property.  103 T.C.M. (CCH) 1864, 2012 WL 2094306, at *1 (2012), *vacated in part on other grounds*, 104 T.C.M. (CCH) 126, 2012 WL 3101513 (2012).  The deed prohibited petitioners from altering a portion of the property's façade without first obtaining the NAT's written consent.  *Id.*  The value of the easement was appraised on October

---

[5] Although Tax Court decisions are not binding precedent upon this Court, the Supreme Court has found that:  "The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work.  While its decisions may not be binding precedents for courts dealing with similar problems, uniform administration would be promoted by conforming to them where possible."  *Dobson v. Comm'r*, 320 U.S. 489, 502 (1943).

4, 2004, the deed of easement was delivered on October 20, 2004, and the deed was recorded on December 10, 2004. *Id.* at *1-*2.

Petitioners claimed the conservation easement as a charitable contribution deduction on their 2004 tax return. *Id* at *3. The IRS, however, disallowed the deduction finding that the appraisal report submitted in support of the claimed deduction was made earlier than 60 days before the easement contribution date, in violation of treasury regulation 26 C.F.R. § 1.170A-13(c)(3)(i)(A). *Id.* at *12. While petitioners asserted that the contribution date was October 20, 2004, the date on which petitioners delivered the executed deed to the NAT, the IRS contended that the contribution date was the recording date, December 10, 2004. *Id.* The Tax Court, citing ECL § 49-0305(4), held that "[u]nder New York law, an instrument purporting to create, convey, modify, or terminate a conservation easement is not effective unless recorded," and that therefore the contribution date of a conservation easement is the recording date. *Id.*

In light of the foregoing, the Court finds that the Easement here was not contributed until the Deed of Easement was recorded in 2005, and as a consequence, Mecox was not permitted to take a deduction for a "qualified conservation contribution" on its Form 1065 in 2004.[6]

**1. Application of the ECL**

Mecox contends that the ECL does not apply in this case. *See* Plaintiff Mecox Partners LP's Memorandum of Law in Opposition to United States' Motion for Partial Summary

---

[6] Even if the Court were to accept that the contribution date of the Easement was the delivery date of the Deed, regardless of whether the Deed was effective at that point, the Easement still did not satisfy the Code's definition of a "qualified conservation contribution" under 26 U.S.C. § 170(h)(1) until 2005. This is because a "qualified conservation contribution" must be made "exclusively for conservation purposes." 26 U.S.C. § 170(h)(1)(C). This means that the contribution must be "protected in perpetuity," 26 U.S.C. § 170(h)(5)(A), and thus "subject to legally enforceable restrictions," 26 C.F.R. § 1.170A- 14(g)(1). But the Easement contribution was not even effective between the parties until it was recorded. Therefore, regardless of when the Easement is considered to have been contributed, the Easement did not meet the Code's substantive requirements of what constitutes a "qualified conservation contribution" until the Deed of Easement was recorded in 2005.

Judgment ("Pl. Br."), Doc. 34, at 5-7.  Rather, according to Mecox, the Easement is a common-law restrictive covenant, which does not require recordation to be effective.  *Id.* at 9.  Mecox supports this contention by pointing to the ECL's definition of a "conservation easement" as "an easement, covenant, restriction or other interest in real property, *created under and subject to* the provisions of this title."  *Id.* at 5 (quoting ECL § 490303(1) (emphasis added)).  Mecox asserts that "[n]othing in the easement makes mention of the ECL or indicates that the parties intended to create an instrument 'created under and subject to' [the ECL]."  *Id.*  Therefore, the contribution of the Easement was completed as soon as Mecox delivered the executed Deed of Easement to the NAT in 2004.  *Id.* at 9.

But contrary to Mecox's assertion, the Deed of Easement evinces a clear intent by the parties to create a "conservation easement" under the ECL.  Under New York Law "[e]very instrument creating [or] transferring . . . an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law."  N.Y. Real Prop. Law § 240(3); *see also Mau v. Schusler*, 124 A.D.3d 1292, 1294 (4th Dep't 2015) (same).  "The 'intent' to which the statute refers is the objective intent of the parties as manifested by the language of the deed; unless the deed is ambiguous, evidence of unexpressed, subjective intentions of the parties is irrelevant."  *Mau*, 124 A.D.3d at 1294-95 (internal citation omitted).

While the parties here did not expressly refer to the term "ECL" in the Deed of Easement, they specifically used the term "Conservation Easement" in the document header and the term "Conservation Deed of Easement" in the title of the Deed.  Ex. 1 at 2.  The term "Open Space and Architectural Façade *Conservation Easement*" is also used throughout the text of the document.  *Id.* at 2, 3, 7 (emphasis added).

Furthermore, the Easement described in the Deed of Easement fits squarely within the ECL's definition of a "conservation easement." The Deed of Easement restricts Mecox from making, without the NAT's written consent:

> any alteration, construction or remodeling of existing exterior improvements on the Protected Façade(s) [of the Building, a "certified historic structure,"] or the placement thereon or on the Building of signs or markers that would materially alter or change the appearance of the Protected Façade.

Ex. 1 at 3. The ECL defines a "conservation easement" as:

> an easement, covenant, [or] restriction . . . which limits or restricts development, management or use of such real property for the purpose of preserving or maintaining the scenic, open, historic, archaeological, architectural, or natural condition, character, significance or amenities of the real property.

ECL § 49-0303(1). There is thus no question that the Easement falls under the ECL's definition of a "conservation easement."

The Parties also saw to it that the Deed met requirements mandated by the ECL. The Deed states that the Easement is "exclusively for conservation purposes" in accordance with the ECL's definition of a "conservation easement," ECL § 49-0303(1); the Deed was transferred to a non-profit entity, in compliance with ECL § 49-0305(3)(a) ("A conservation easement shall be held only by a public body or not-for-profit conservation organization . . . ."); and given the Deed's inclusion of a box with the note: "Reserve This Space For Use of Recording Office," Ex. 1 at 9, the parties clearly intended for the Deed to be recorded – and did record it – as required by ECL § 49-0305(4) ("A conservation easement shall be duly recorded . . . .").

It is true, as Mecox points out, that the ECL states that it "shall not affect the rights of owners to convey any interests in real property which they could now create under existing law without reference to the terms of [the ECL]." Def. Br. at 5 (quoting ECL § 49-0309). But, as

12

demonstrated above, the Deed not only refers to – and satisfies – the terms of the ECL, but repeatedly employs the term "conservation easement," the exact name of the property interest that the ECL is intended to govern.

Mecox nonetheless seems to suggest that the ECL itself must be explicitly cited in the deed for the statute to apply. Yet nothing in the text of the ECL suggests that the statute must be referenced by name in order for it to govern the terms of a contract, nor has Mecox provided any authority indicating the existence of such a requirement.

More significantly, Mecox has not cited – nor is the Court aware of – a single case in which a conservation deed of easement that satisfied the terms of the ECL was, *for any reason*, interpreted as a common law restrictive covenant. Mecox alludes to *Nature Conservancy v. Congel*, 253 A.D.2d 248, 252 (4th Dep't 1999) as an example of a Court "recognizing that a restrictive covenant was not a conservation easement under the ECL." Pl. Br. at 6. However, the court in *Congel* did not deem a contract that otherwise met the requirements of a conservation easement under the ECL to be a restrictive covenant; rather, the contract in that case did not qualify as a conservation easement because it did not satisfy the ECL's requirement that the contribution be made to a non-profit entity. *Nature Conservancy*, 253 A.D.2d at 252.

While the Court recognizes that the ECL is not the exclusive means for creating or conveying enforceable property interests, Mecox cannot point to any terms in the Deed that suggest the parties intended to circumvent the ECL and create a common law restrictive covenant. Rather, the Deed of Easement reflects an unambiguous intent by the parties to create a conservation easement, as defined by the ECL. Mecox's after-the-fact, subjective claims to the contrary are immaterial.

**2. The ECL's Recordation Requirement**

Mecox argues in the alternative that even if the ECL does apply to the Easement in this case, recordation is not required for a conveyance to be effective. *See* Pl. Br. 7-9. Rather, recordation is only necessary for a conservation easement to be enforceable against *subsequent purchasers*. *Id.* at 7. Mecox explains that "[t]his definition is consistent with other definitions of 'conveyance' found in New York law." *Id.* at 7 n.4.

However, Mecox's interpretation is in direct contradiction with the text of the ECL. "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Appleton Acquisition, LLC v. Nat'l Hous. P'ship*, 10 N.Y.3d 250, 260 (2008) (internal citation omitted). The plain text of the ECL states without qualification that (1) "a conservation easement *shall be duly recorded*" and (2) that an unrecorded conservation easement *"shall not be effective."* ECL § 49-0305(4).

This language is in contrast to general New York real property rules, where the legislature has clearly indicated that recordation is unnecessary for a conveyance to be effective. For example, N.Y. Real Property Law § 291 provides: "A conveyance of real property . . . *may be recorded* . . . . Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange . . . the same real property or any portion thereof." Similarly, N.Y. Real Property Law § 244 states that a "grant takes effect, so as to vest the estate or interest intended to be conveyed, *only from its delivery*."

As described above, however, conservation easements are subject to special rules enumerated in the ECL, which include, among other things, the benefits of certain defenses not granted to common law easements, as well as the requirement that a conveyance be recorded to be effective. To the extent these terms conflict with New York Real Property Law, the Supreme

Court has stated that "specific terms prevail over the general in the same or another statute which otherwise might be controlling." *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932). Thus, the Court finds that recordation is necessary for the effective conveyance of a conservation easement.

Mecox claims that this interpretation ignores precedent set by *O'Mara v. Town of Wappinger*, 485 F.3d 693 (2d Cir. 2007), decided in the U.S. Court of Appeals for the Second Circuit. Pl. Br. 7. Mecox points to the *Wappinger* court's statement that the ECL requires "restrictions to be recorded in order to be enforceable against subsequent purchasers." *Wappinger*, 485 F.3d at 699. However, *Wappinger* did not concern conservation easements under the ECL. Rather, the Court considered whether an open space restriction imposed by a town planning board under N.Y. Town Law § 276 was enforceable against subsequent purchasers. *Id.* at 695. The Second Circuit was merely observing that other New York statutes "in other land use contexts" do require "restrictions to be recorded in order to be enforceable against subsequent purchasers. *Id.* at 699 (citing N.Y. Gen. Mun. Law § 274(4); N.Y. Real Prop. Law § 291; ECL § 49-0305(4)). Thus not only is the language cited by Mecox dicta, but it fails to indicate that recordation is *unnecessary* for a conservation easement to be effective – all it says is that recordation *is necessary* for a conservation easement to be effective against subsequent purchasers.[7]

---

[7] Mecox also points to ECL § 49-0305, subsection 7 to suggest that "the New York legislature recognized that federal income tax benefits associated with a conservation easement would arise when an easement is *conveyed*, not at some later recording date." Pl. Br. at 9 (emphasis in original). Subsection 7 states, in pertinent part:

> [T]he department shall promulgate regulations establishing standards for conservation easements which shall specify but not be limited to . . . the minimum term for a conservation easement as is necessary and appropriate to achieve the policy and purpose of this title, except that *such standards shall not preclude taxpayers who own or convey conservation easements from qualifying for benefits under federal or state tax laws when such benefits would otherwise be available by virtue of such ownership or conveyance* . . . .

15

For these reasons, the Court rejects Mecox's arguments that the Easement was contributed to the NAT in 2004.

### C. Mecox's Appraisal of the Easement was Untimely

Treasury regulations require that an "appraisal document" be prepared by a "qualified appraiser" no earlier than 60 days before the contribution date of the appraised property, and no later than the extended due date of the tax return claiming the deduction. 26 C.F.R. § 1.170A-13(c)(3)(i). In this case, the appraisal was conducted on June 13, 2005, but the Easement was not contributed until the Deed of Easement was recorded on November 17, 2005. Because the appraisal took place more than 60 days before the contribution date of the Easement, Mecox did not meet the federal substantiation requirements required for a qualified conservation contribution deduction. *See Rothman*, 2012 WL 2094306, at *12.

### III. CONCLUSION

For the foregoing reasons, the Government's motion for partial summary judgment is GRANTED. The parties are directed to appear for a status conference on Wednesday, February 10, 2016 at 11:00 AM. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 29.

It is SO ORDERED.

Dated:   February 1, 2016
         New York, New York

                                                     Edgardo Ramos, U.S.D.J.

---

ECL § 49-0305(7) (emphasis added). Mecox concludes from this language that the New York legislature contemplated that federal tax benefits are "available by virtue of . . . conveyance" of a conservation easement, not recording of the instrument. Pl. Br. at 9. Yet, Mecox fails to confront the fact that, as described above, the conveyance of a conservation easement under the ECL is not effective until recordation – there can be no conveyance without recordation. Subsection 7 is therefore consistent with the Court's finding that federal tax benefits are not available for a conservation easement until the Deed of Easement is recorded.